### BURRELL CAIN, ALIAS KING, v. THE STATE.

No. 4395.   Decided March 21, 1917.

**Theft—Insufficiency of the Evidence—Circumstantial Evidence.**

Where, upon trial of theft, the evidence did not meet the requirements of
circumstantial evidence sufficient to convict, and did not exclude every reason-
able hypothesis except the guilt of the defendant, and the conviction was de-
pendent upon circumstantial evidence alone, the same could not be sustained,
and the judgment is reversed and the cause remanded.

Appeal from the Criminal District Court of Dallas.   Tried below
before the Hon. Robt. B. Seay.

Appeal from a conviction of theft; penalty, two years imprisonment
in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of theft,
his punishment being assessed at two years confinement in the peni-
tentiary.

Substantially, the facts show that on the night of the alleged theft
appellant, the alleged owner, Parker, and a witness named Cheney
were sitting on the gallery of a house at which they boarded, which
belonged to the witness Mrs. Criddell.   The alleged owner states after
sitting there a while he went to his room, which adjoined the gallery,
to go to bed; that he counted his money as he often did and had about
$278, and also had a watch supposed to be worth about $25; that be-
fore going to bed he went out on the gallery and aroused the witness
Cheney, who seems to have fallen asleep.   After arousing him the two
went to bed in the room, Parker hanging his pants, with the money
in one of the pockets, on the head of the bed.   This room had a screened
door, which they latched on the inside, and the windows had screens,
which were nailed down.   Appellant was on the gallery singing, it
seems from the testimony of Cheney, after they retired to their room
and laid down.   The singing disturbed him and he made some com-
ment and defendant ceased singing and supposedly went to sleep.   About
the time Mrs. Criddell retired, or was retiring, appellant went through
her room and talked with her a moment, and went really, or supposedly,
to his room, which was in the rear end of the house.   The house con-

sisted of four rooms in a straight line, all of them fronting east. Behind the house was a vacant square space between it and one or more beer saloons. On this vacant space the negroes would gather and "have a good time." Mrs. Criddell testifies that defendant paid her some money the day preceding the alleged theft, or shortly before, stating that he had only a small amount of money left He paid her one dollar at one time and twenty-five cents at another, leaving him, as she testifies, under his statement, with very little money. The next morning appellant and another negro, Mrs. Criddell says, were eating breakfast at a cafe or restaurant somewhere about the town. She found them there, and another negro testified that during the meal defendant treated to beer. Appellant's room, Mrs. Criddell says, had one of the screened windows up the next morning. He left earlier than usual. It seems he was a laborer. The next morning Mrs. Criddell seemed to be somewhat excited, and was perhaps the first one to discover that something had gone wrong in the house and talked about it. Finally Parker and Cheney came and told her about the matter, and they went out on the front gallery. The screened door and windows of Parker's and Cheney's room had not been disturbed, but their pants were found on the gallery rolled up separately, with Parker's money gone and Cheney's money gone. Cheney says he had $21 and some cents and a watch supposed to be worth $25. Parker testified that appellant did not know that he, Parker, had the money, and so far as the record goes to show, he was not aware that either of them had money. Parker went to the city hall the next morning and gave information that his property had been stolen. A policeman named Pegues saw defendant the next evening late and had a conversation with him. What that conversation was is not stated, but after having this conversation, which occurred before an arrest, he examined defendant and found seven dollars on his person,—a five dollar bill and two one dollar bills. Cheney says he lost one one dollar bill and Parker says he lost two or more. There is no reason given why the conversation between Pegues and appellant was not inserted in the record. This is practically the case with fuller details of the testimony perhaps than was necessary.

We do not believe the evidence is sufficient to justify this conviction. It does not meet the requirements of circumstantial evidence, nor does it exclude every reasonable hypothesis except the guilt of the defendant. There were equal opportunities for others to have gotten the money. No one saw appellant in the room. Something like three hundred dollars in money and two watches were taken. They say appellant had a five dollar bill and two one dollar bills. There was a five dollar bill and four one dollar bills lost, but that is too slender a circumstance, under the facts of this case, to justify the conviction. He may have gotten the money; he may not have gotten it. This record fails to show that he did, and the circumstances are not legally sufficient to so show, in our judgment.

There are bills of exception in the record, but as qualified and pre-

sented we will not discuss them as they may not arise upon another trial, especially the alleged misconduct of the jury.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*